## In re CONNECTICUT BRASS & MFG. CORPORATION.

(District Court, D. Connecticut. April 3, 1919.)

### No. 4666.

1. BANKRUPTCY ⬅️92—INVOLUNTARY PETITION—FAILURE TO PROSECUTE.
   Involuntary bankruptcy petition might be dismissed for laches in prosecution, where creditors did nothing for six months, except obtain permission to amend petition.

2. BANKRUPTCY ⬅️11—COURTS—NATURE.
   A court of bankruptcy is a court of equity.

3. EQUITY ⬅️363—DISMISSAL—TIME.
   Motion to dismiss, made in good faith and raising substantial issues vitally affecting the merits, may be entertained by court of equity at any time within a reasonable period.

4. BANKRUPTCY ⬅️92—INVOLUNATRY—MOTION TO DISMISS.
   Under Bankruptcy Act July 1, 1898, § 18b (Comp. St. § 9602), authorizing creditors to plead to petition within five days after return day, and section 59f (section 9643) providing that creditors other than original petitioners may file answer at any time, a motion to dismiss involuntary petition is not too late, because made more than five days after return day.

5. BANKRUPTCY ⬅️92—MOTION TO DISMISS—VERIFICATION.
   Bankruptcy Act July 1, 1898, § 18c (Comp. St. § 9602), requiring verification of pleadings setting up matters of fact, is inapplicable to motion to dismiss an involuntary petition made under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), requiring defenses on matters of law previously made by demurrer to be raised by motion.

6. BANKRUPTCY ⬅️61—ACT OF BANKRUPTCY—EQUITABLE RECEIVERSHIP.
   A debtor, by admitting allegations of bill requesting an equitable receivership and alleging debtor's insolvency, does not thereby commit an act of bankruptcy.

7. BANKRUPTCY ⬅️81(3)—PLEADING—INSOLVENCY.
   Involuntary bankruptcy petition, alleging that debtor was insolvent, is insufficient, because pleading a conclusion.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the Connecticut Brass & Manufacturing Corporation, alleged bankrupt. On motion to dismiss an involuntary petition. Motion granted.

Carmody, Monagan & Larkin, of Waterbury, Conn., for receiver.

Bronson, Lewis & Hart, of Waterbury, Conn., for petitioning creditors.

Allan K. Smith, of Hartford, Conn., for the United States.

Cummings & Lockwood, of Stamford, Conn., for noteholders' committee.

Rosenberg & Ball, of New York City, for certain creditors.

THOMAS, District Judge. In the suit of Equitable Trust Co. of New York v. Connecticut Brass & Manufacturing Corporation of Waterbury, Conn., now pending in this court, receivers were appointed for the defendant corporation on September 5, 1918. The suit in this court is ancillary to the suit in equity between the same parties pending in the federal court in Delaware, and by a decree in that court it appears that receivers were duly appointed, and qualified. The bill, answer, and decree in the Delaware suit are part of the file in this suit.

In the suit pending here the bill alleges that practically all of the assets of the defendant corporation, worth at a fair valuation $1,700,-000, are located in this district, and that nearly all of its business is carried on here. It is further alleged that the corporation has assets of about $1,700,000, and that its liabilities amount in all to $1,265,000, consisting of notes amounting to $565,000 and a general indebtedness of about $700,000, so that from the face of the bill it appears that the assets are $435,000 more than the liabilities and that the corporation is solvent. It is further alleged that certain of the defendant's creditors are pressing for immediate payment of their respective claims, and are likely to bring suit against the defendant, to attach its property and to cause its property to be sold in satisfaction of such judgments.

The defendant corporation filed its answer, admitted the allegations of the bill, and joined in the application for the appointment of the receivers, and pursuant thereto receivers in equity were appointed. The receivers were authorized to conduct the business, and have conducted it as a going concern in an endeavor to conserve the assets, preserve the estate, and eventually to turn it back to the stockholders, after satisfying its indebtedness.

On September 14, 1918, certain creditors filed an involuntary petition in bankruptcy against this respondent in which petition they represented as follows:

"That said the Connecticut Brass & Manufacturing Company is insolvent, and within four months next preceding the date of this petition said the Connecticut Brass & Manufacturing Company committed an act of bankruptcy, in that it did heretofore, to wit, on the 4th day of September, 1918, being insolvent, apply for a receiver of its property and because of insolvency a receiver was appointed by the United States District Court for the District of Connecticut, which said receiver, because of said insolvency, was put in charge of the property of the corporation in the state of Connecticut, in an action brought by the Equitable Trust Company of New York against said the Connecticut Brass & Manufacturing Corporation, in which action ancil-

lary proceedings arc now pending in said United States District Court for the District of Connecticut. The defendant admitted the averments contained in said bill and complaint in said action, and joined in said application for the appointment of said receiver, and on said 4th day of September one William H. Coverdale, of the city and state of New York, who had been appointed receiver of the property, income, and assets of said the Connecticut Brass & Manufacturing Corporation by the District Court of the United States for the District of Delaware, was appointed ancillary receiver by the District Court of the United States for the District of Connecticut."

No proceedings were taken by the petitioning creditors after said petition was filed, but the alleged bankrupt on the 23d of September, 1918, filed its answer to said petition, in which it denied all the allegations contained in the petition. On March 11, 1919, counsel appeared before the court, and the hearing on the involuntary petition was assigned for April 1, 1919. On March 26, 1919, counsel representing noteholders' and creditors' protective committee and an individual creditor appeared, and on March 29, 1919, filed a motion to dismiss the involuntary petition in bankruptcy against the respondent, on the ground:

"That said petition on its face does not state any facts upon which an adjudication in bankruptcy could be granted herein. The ground upon which the involuntary petition is filed is the appointment of a receiver in a suit in equity in the above court. We refer to and make a part of this motion, the same as if here set forth, the bill of complaint in the said suit in which the Equitable Trust Company of New York is complainant and the Connecticut Brass & Manufacturing Company is defendant, said bill of complaint having been filed in this court on September 4, 1918, and being a part of the records of this court, and, as appears from the face of the said bill in equity in said suit just referred to, and by examination of said bill, it affirmatively appears that no act of bankruptcy has been committed, as we respectfully contend, by the alleged bankrupt."

On October 3, 1918, the petitioning creditors moved for permission to amend the bankruptcy petition which motion was, on said day, granted, but counsel for the petitioning creditors failed to avail themselves of the opportunity thus afforded them to file said amendment, so that the present motion to dismiss is addressed to the original petition quoted supra.

[1] The court might properly dismiss this petition on the ground of laches and failure to prosecute, but as substantial questions are here presented, which ought to be considered and decided, I have concluded not to pass on the question of laches further than to make the above suggestion.

[2-4] This motion is made pursuant to the provisions of equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), which, so far as is here pertinent, provides:

"Every defense in point of law arising upon the face of the bill, whether for misjoinder, nonjoinder, or insufficiency of fact to constitute a valid cause of action in equity, which might heretofore have been made by demurrer or plea, shall be made by motion to dismiss, or in the answer."

This rule is applicable here and is properly before the court, but objection is made by the petitioning creditors that under section 18b of the act (Act July 1, 1898, c. 541, 30 Stat. 551 [Comp. St. § 9602]), the creditors must appear and plead within five days after the return day, and that, having failed to do so, this motion cannot be entertained. The

answer to this objection is simple. A court of bankruptcy is a court of equity, and in the equity court a motion to dismiss, made in good faith and raising substantial questions vitally affecting the merits, may be entertained by the court at any time within a reasonable time, and may be made even on its own motion. And further, if section 59f (section 9643) is read in connection with section 18b, it is clear that there is no merit in the objection made by the petitioning creditors. Collier on Bankruptcy (10th Ed.) 424, 425, 433, 779, 780, 781, 782.

[5] Objection is further made that, as the motion sets forth facts, it should be verified under oath, as provided in section 18c. The answer to this claim is that the motion to dismiss under rule 29 is in lieu of a demurrer, and sets forth no facts, but raises only a question of law, as was formerly raised by a demurrer.

The preliminary objections having been answered adversely to the petitioning creditors, the only remaining question is as to the merits of the question of law presented by this motion.

[6] The argument of the petitioning creditors against the motion resolved itself into the proposition that, as the alleged bankrupt had joined in the application for the appointment of the receivers, and had admitted in its answer the allegations of the bill of complaint, such conduct is tantamount to applying for a receiver under the Bankruptcy Act, and numerous cases are cited to support this proposition.

A further reason advanced against the granting of the motion is based on the claim that the allegations set forth in the involuntary petition, and quoted supra, are sufficient to bring the petitioners within the meaning of the Bankruptcy Act. We will dispose of these contentions in their order.

In support of the first proposition counsel cite and rely upon the following cases: In re Spalding, 139 Fed. 244, 71 C. C. A. 370; In re Pickens Mfg. Co. (D. C.) 158 Fed. 894; In re Maplecroft Mills (D. C.) 218 Fed. 659; Exploration Mercantile Co. v. Pacific Hardware & Steel Co., 177 Fed. 825, 101 C. C. A. 39; Doyle-Kidd Dry Goods Co. v. Sadler-Lusk Trading Co. (D. C.) 206 Fed. 813.

An examination of all of these cases shows that the decisions there reached were based upon an allegation of insolvency, or it appeared that the person or corporation was insolvent, and for that reason joined in the application for the appointment of a receiver. None of the cases cited are cases involving an equitable receivership, where it appears on the face of the bill that the assets are in excess of liabilities. The cases cited and relied upon in support of the petitioning creditors' argument are not opposite to the case at bar.

Here we have an equitable receivership, which is intended to avert insolvency. The allegations in the bill show, not insolvency, but solvency. It would be going too far to say that a solvent corporation, at least solvent so far as the record shows, committed an act of bankruptcy by applying for the appointment of a receiver, or joining in an application for the appointment of a receiver, simply because it had not the ready cash to meet all its obligations and immediate demands as they mature in the ordinary course of business, and because creditors were threatening attachments.

The authorities are too clear and conclusive to discuss the question further, as the differentiation between the two sets of facts—i. e., solvency and insolvency—is so emphasized as to make it clear to him who reads. In re Douglas Coal & Coke Co. (D. C.) 131 Fed. 769; In re Wm. S. Butler & Co., 207 Fed. 705, 125 C. C. A. 223.

The law governing this situation is settled. Nowhere is it more clearly stated than by Judge Hazel in Re Edward Ellsworth Co. (D. C.) 173 Fed. 699. On page 700 he said:

"The inquiry presented is whether the corporation proceeded against, by admitting the material allegations of the bill in the equity action and joining in the application for the appointment of receivers, can be held in a legal sense to have applied therefor pursuant to section 3a, subd. 4, of the Bankruptcy Act, * * * as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [Comp. St. § 9587]. * * *

"If the company, while insolvent, had voluntarily brought an action to wind up its affairs for the benefit of its creditors, and had applied for the appointment of receivers to take charge of its property, the superior right of the bankruptcy court could not safely be questioned; but the interposition of an answer in an action brought by a contract creditor, admitting therein the truth of the allegations of the bill and joining in the prayer for relief, is not believed to be the equivalent of the term 'being insolvent, applied for a receiver or trustee for its property.' In the equity action the complainants applied for receivers on the ground that the Edward Ellsworth Company was unable to pay its debts as they matured, and that it would be to the advantage of creditors and stockholders to have its affairs wound up. Nowhere in the bill is it asserted that the corporation is insolvent, as that term is defined by section 1, subd. 15, of the Bankruptcy Act [section 9585]. In fact the bill contains an affirmative allegation that the defendant is solvent. Such averments, together with the admission by the corporation of their truth and its consent to the appointment of receivers of its property, undoubtedly vested the Circuit Court, in view of the diversity of citizenship of the parties, with power and authority to act in the premises. In re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403."

[7] The second question raises a question simply of pleading. To allege that a corporation is insolvent is to plead a conclusion. Facts must be pleaded, not conclusions.

In re Sig. H. Rosenblatt & Co., 193 Fed. 638, 113 C. C. A. 506, is a complete answer to the second point relied upon. There Judge Lacombe said, on pages 639 and 640 of 193 Fed., on pages 507, 508 of 113 C. C. A.:

"Neither of these petitions gives any details as to the date of the alleged preferences, the amount of the preferences, the persons preferred, the amount of the alleged fraudulent transfers, the dates of the transfers, the persons to whom, or the amount of the property. No word appears as to what property was concealed, with whom, at what time, nor whether the concealed property is still in the possession, or control of the alleged bankrupts.

"It is well settled that such general averments, without any specification sufficient to apprise the alleged bankrupt of the charge against him so as to enable him to answer it, are too vague and general. Many of the authorities supporting this proposition will be found in the single case which petitioner cites—In re Bellah (D. C.) 116 Fed. 69."

The motion to dismiss the involuntary petition is granted. The hearing on the receiver's reports may be set for Monday, April 14, 1919, at 10:30 a. m., at New Haven.